Slip Op. 07 - 87

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x
TA CHEN STAINLESS STEEL PIPE CO., LTD.,  :

                        Plaintiff,    :
             v.
                                      :   Consolidated
UNITED STATES,                            Court No. 05-00094
                                      :
                        Defendant,    :
             -and-                    :

ALLOY PIPING PRODUCTS, INC. *et al.*,     :

                Intervenor-Defendants.  :
- - - - - - - - - - - - - - - - - - - x

Opinion & Order

[Intervenor-defendants' motion for judgment
 on agency record granted in part; remanded
 to the International Trade Administration.]

Decided: May 30, 2007

Miller & Chevalier Chartered (Peter J. Koenig and Elizabeth
E. Puskar) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; Jeanne E.
Davidson, Director, Patricia M. McCarthy, Assistant Director,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (Stephen C. Tosini); and Office of the Chief Counsel for
Import Administration, U.S. Department of Commerce (Kemba T.
Eneas), of counsel, for the defendant.

Collier Shannon Scott, PLLC (Jeffrey S. Beckington and
David A. Hartquist) for the intervenor-defendants.

AQUILINO, Senior Judge:  This case, commenced pursuant

to 19 U.S.C. §1516a(a)(2)(A), consolidates complaints

filed by foreign manufacturer and exporter Ta Chen Stainless
Steel Pipe Co., Ltd. ("Ta Chen"), CIT No. 05-00094, and by Alloy
Piping Products, Inc.; Flowline Division of Markovitz
Enterprises, Inc.; Gerlin, Inc.; and Taylor Forge Stainless,
Inc., which comprise the domestic U.S. industry, CIT No. 05-
00157, each complaint contesting certain aspects of <u>Certain
Stainless Steel Butt-Weld Pipe Fittings From Taiwan: Final
Results and Final Rescission in Part of Antidumping Duty
Administrative Review</u> published by the International Trade
Administration, U.S. Department of Commerce ("ITA") at 70
Fed.Reg. 1,870 (Jan. 11, 2005).


                                I


     That agency administrative review of the ITA's
underlying antidumping-duty order, 58 Fed.Reg. 33,250 (June 16,
1993), pursuant to 19 U.S.C. §1675(a) was carried out at the
request of both sides for the period June 1, 2002 through May
31, 2003 [hereinafter the "POR"].  The goods subject to that
order are finished and unfinished pipe fittings less than 14
inches inside diameter that are typically used to connect pipe
systems where conditions require welded connections.  They have
a variety of shapes, including "elbows", "tees", "reducers",
"stub ends", and "caps".

Consolidated
Court No. 05-00094                                            Page 3


                                    A

        The record compiled during the review includes a <u>Ta</u>

<u>Chen   Affiliations   Memorandum</u>[1];  the   <u>Preliminary   Results   of</u>

<u>Antidumping Duty Administrative Review and Notice of Intent to</u>

<u>Rescind in Part</u>, 69 Fed.Reg. 40,859 (July 7, 2004); and an

<u>Issues and Decision Memorandum for the Administrative Review of</u>

<u>Stainless Steel Butt-Weld Pipe Fittings from Taiwan</u>[2].


        In its Section A[3] response to the ITA's request for

information, Ta Chen reported that it was affiliated with Ta

Chen International ("TCI"); Ta Chen (BVI) Holdings, Ltd.; Ta-Jei

Investment Co., Ltd.; Ta Ever Investment Co., Ltd.; Ta Chen

Steel Investment Co., Ltd.; Banner Fastener, Inc.; Tension

Control Bolting, Inc.; Shiziahuang Hitai Precision Casting Co.,

Ltd.; and Ta Chen Baoding Precision Casting Co., Ltd.; the same

companies   identified   in   Ta   Chen's   previous   administrative

---

        [1] Intervenor-Defendants' Appendix, Tab 2 (June 29, 2004)
[hereinafter the <u>Affiliations Memorandum</u>].

        [2] <u>Id</u>., Tab 3 (Jan. 3, 2005)[hereinafter the <u>Decision</u>
<u>Memorandum</u>].

        [3] The <u>Preliminary Results</u>, 69 Fed.Reg. at 40,860 n. 1,
explain that

        Section A of the questionnaire requests general
        information   concerning   a   company's   corporate
        structure and business practices, the merchandise
        under investigation, and the manner in which the
        company sells that merchandise in all markets.

review.   See Affiliations Memorandum, p. 2.   The domestic

industry thereupon alleged Ta Chen affiliation with a number of

theretofore-unidentified   entities,   claiming   the   company's

responses   on   affiliation   were   incomplete   and   inaccurate   and

demanding   that   the   ITA   instruct   Ta   Chen   to   disclose   all

affiliated   parties   in   Taiwan,   the   United   States,   and   third

countries.   The   agency   did   just   that,   issuing   a   supplemental

Section A   questionnaire   as   to   Ta   Chen   corporate   structure   and

affiliation   information.    Its   response   thereto   disclosed   one

additional corporate affiliate.

        The   domestic   industry   renewed   its   allegations   of

incomplete disclosure:

> . . . Ta Chen has not put forth its maximum effort to
> respond   fully   and   accurately   to   the   . . .
> questionnaires. . . .   Ta Chen has not disclosed all
> of its affiliated parties, despite two attempts made
> by the Department to obtain this information. . . .
>
>                         *   *   *
>
> . . . Petitioners ask . . . that the Department find
> that Ta Chen has failed to exert its maximum efforts
> to   cooperate   in   this   review   . . .   and   has   actively
> misled   the   [ITA]   in   major   and   multiple   respects,
> foremost   by   withholding   . . .   the   identities   and
> complete details of Ta Chen's relationships with [its]
> affiliated U.S. companies. . . .   [T]he [ITA] should
> . . .   assign   [a]   76.20   percent   ad   valorem   [dumping
> margin]   to   Ta   Chen's   subject   merchandise   as   total
> adverse facts available.

Record Document ("R.Doc") 31, pp. 3-4, 25.

In its subsequent, third tender of information, Ta Chen provided the ITA with corporate organizational charts, identifying several additional potential affiliates. It noted that it supplied this information "just in case", in that it did not believe it was affiliated with them. <u>See</u> R.Doc 40, p. B-1.

Counsel for the domestic industry met with ITA staff to discuss the affiliation issues. The meeting precipitated the issuance of a third, detailed, supplemental Section A questionnaire. It noted that, given the information then on the record, the ITA "may have reason to preliminarily find that . . . [14] entities [in addition to the nine first identified] are affiliated to [*sic*] Ta Chen." R.Doc 43, p. B-1. On its part, the respondent asserted that, from

> the outset of this review, Ta Chen has reported those
> companies that have anything to do with the subject
> merchandise stainless steel butt-weld pipe fittings,
> whether production, sales or supply of inputs. . . .
> Ta Chen again submits a chart illustrating
> relationships between Ta Chen and companies the [ITA]
> submits as potential affiliates. . . . We include
> these names as an exercise of caution, and not from a
> belief on our part that they should be deemed
> affiliates[.]

R.Doc 51, pp. 1-2.

B

The ITA's consideration of the "complex affiliation[]
issues"[4] raised during the administrative review at bar is
reflected in determinations that are summarized *seriatim* below.

(1)

ITA staff's initial analysis is set forth in the
Affiliations Memorandum.  Some 31 entities, in addition to those
named by Ta Chen in its original Section A response, were
identified[5] as potential affiliates.  The Affiliations Memorandum

---

[4]  Stainless Steel Butt-Weld Pipe Fittings From Taiwan:
Exension of Time Limit for the Preliminary Results of the
Antidumping Duty Administrative Review, 69 Fed.Reg. 22,763
(April 27, 2004).

[5]  The domestic industry's deficiency comments ultimately
identified some 17 companies as possible Ta Chen affiliates,
namely, Dragon Stainless, Inc. ("Dragon"); Millennium Stainless,
Inc. ("Millennium"); South Coast Stainless, Inc. ("South
Coast"); Southstar Steel Corporation ("Southstar"); Stainless
Express, Inc. ("Stainless Express 1");  Stainless Express
Products, Inc. ("Stainless Express 2"); NASTA International
("NASTA"); Estrela Steel, Inc. ("Estrela 1"); AMS Specialty
Steel, LLC SOSID #0552293 ("AMS North Carolina 1"); AMS
Specialty Steel, LLC SOSID #0654511 ("AMS North Carolina 2");
AMS Steel Corporation ("AMS Corp."); KSI Steel, Inc.; K Sabert,
Inc.; Sabert Investments, Inc.; Becmen, LLC; Becmen Specialty
Steels, Inc.; and Becmen Trading International, Inc.  See
Affiliations Memorandum, p. 2 n. 1.

Ta Chen's supplemental submissions identified Emerdex
Stainless Flat Roll Products, Inc. ("Emerdex 1"); Billion
Stainless, Inc. ("Billion"); DNC Metals, Inc. ("DNC"); Hsieh
Family Trust; and LPJR Investment, LLC as possibly-affiliated
parties.  See ibid. at 3 n. 2.

(footnote continued)

considered Ta Chen's possible affiliation with 28 of them.[6]  It

grouped them into two categories: "Entities with Activities

Related to the Production or Sale of Subject Merchandise" and

"Entities Without Apparent Activities Related to Subject

Merchandise".  Affiliations Memorandum, pp. 4, 14.  As to the

five entities in the first group[7], it determined that

> the evidence on the record . . . supports a finding
> that [those companies] were affiliated with Ta Chen
> during the entire POR.

Id. at 36.  Of the 23 companies in the second group, however, it

"found no evidence" showing that they

> had business activities . . . related to subject
> merchandise during the POR, or . . . had any known
> transactions with Ta Chen during the POR[.]  [ITA
> staff] cannot find that the relationship between Ta
> Chen and these companies had the potential to impact

---

The record of a previous Ta Chen administrative review
identified PFP Taiwan Co., Ltd. ("PFP") and AMS Specialty Steel,
Inc. ("AMS California") as possible affiliates.  See ibid.
Seven more possibly-affiliated companies were independently
identified by the ITA, namely, Emerdex Stainless Steel, Inc.,
("Emerdex 2"); Emerdex Group, Inc. ("Emerdex 3"); Emerdex-
Shutters ("Emerdex 4"); TCI Estrela International ("TCI
Estrela"); Estrela LLC ("Estrela 2"); Estrela International
Corporation ("Estrela 3"); and Estrela International, Inc.
("Estrela 4").  See ibid. at 3 n. 2 and 29 n. 24.

[6] Citing "statutory time constraints", ITA staff was "unable
to investigate" whether TCI Estrela, Estrela 3, and Estrela 4
were Ta Chen affiliates during the POR.  See ibid. at 29 n. 24.
The staff did "note that each . . . ha[d] been dissolved or
suspended", although it was "unaware whether they were dissolved
or suspended during the POR." Id.

[7] Emerdex 1, 2, 3, and 4, and Dragon.

> production or pricing decisions of subject merchandise
> during the POR. We therefore decline to examine
> whether the[se remaining] companies[8] were affiliated
> [with Ta Chen] during the POR.

Id.

(2)

The Affiliations Memorandum's proposed findings were

adopted by the ITA in its Preliminary Results, wherein the

agency pointed out that, as to the 23 alleged Ta Chen affiliates

without apparent activities related to subject merchandise, the

domestic industry

> ha[d] not provided evidence indicating that these
> companies were involved in subject merchandise or the
> foreign like product. . . . [It] did not support any
> allegations that the alleged affiliates were involved
> in the specialty steel product which is the subject of
> this review.

69 Fed.Reg. at 40,861-62. Moreover,

> Ta Chen submitted rebuttal information . . . noting
> that the companies were not involved in the subject
> merchandise or foreign like product.

---

[8] AMS California, AMS North Carolina 1, AMS North Carolina
2, AMS Corp., Stainless Express 1, Stainless Express 2, Estrela
1, Estrela 2, South Coast, Millennium, DNC, Billion, Southstar,
NASTA, KSI Steel, Inc., K Sabert, Inc., Sabert Investments,
Inc., Becmen, LLC, Becmen Specialty Steels, Inc., Becmen Trading
International, Inc., PFP, Hsieh Family Trust, and LPJR
Investments, LLC.

Consolidated
Court No. 05-00094                                          Page 9


Id. at 40,862.  The ITA thus reported preliminarily that

> there is no evidence [on the record] indicating that
> these [23] companies were involved in any way that
> potentially affected the production, pricing, costs,
> or sales of subject merchandise or foreign like
> product, or that these companies had any direct
> transactions with Ta Chen.  Because these companies
> were not involved in subject merchandise or foreign
> like product, it is not necessary to consider further
> whether the[y are] affiliated with Ta Chen[.]


Id. at 40,861.


     The agency did see fit to adopt preliminarily staff's

recommendation that the Emerdex companies and Dragon be deemed

Ta Chen affiliates.    See id., citing the Affiliations

Memorandum.  It found

> evidence indicating that [they] . . . were involved in
> a certain number of transactions involving subject
> merchandise. . . .  The record shows that Ta Chen sold
> subject merchandise to Emerdex 2, an affiliated
> company under common control with the Emerdex
> Companies . . . but Ta Chen failed to report Emerdex
> 2's downstream sales of subject merchandise to
> unaffiliated customers during the POR, despite being
> instructed to [do so]. . . .  In addition, . . .
> Dragon, an affiliated company, incurred U.S. selling
> expenses for subject merchandise on behalf of Ta Chen
> . . ..  Ta Chen failed to report the total amount of
> these expenses, and the record does not indicate that
> these expenses were captured in Ta Chen's U.S. sales
> database.


Id. at 40,862.  With respect to those transactions, the ITA

applied "F[acts] A[vailable]" pursuant to 19 U.S.C. §1677e.  Id.

Moreover, "in selecting from among the facts available", the agency found it

> appropriate to apply an adverse inference because Ta Chen did not cooperate to the best of its ability to provide information concerning Emerdex 2 or Dragon. . . . As such . . . the Department has made adverse inferences . . . concerning (1) the Emerdex Companies' downstream sales of subject merchandise; and (2) Dragon's selling expenses in the United States.

Id. at 40,863.

In applying an adverse inference to Emerdex data, the ITA accepted the domestic industry's suggested 76.20 percent ad valorem dumping margin as "reliable", and thus assigned that rate preliminarily for Ta Chen's known sales of subject merchandise in the United States to Emerdex 2. The agency similarly applied an adverse inference to Dragon by "allocat[ing] the total amount of all known payments from Ta Chen to Dragon, for its services, to the U.S. sales of subject merchandise for which Dragon was responsible." Id. at 40,864. Ultimately, as a result of its review, the ITA preliminarily determined that a 5.08% weighted-average dumping margin existed for Ta Chen for the period of June 1, 2002, through May 31, 2003. See id. at 40,866.

(3)

In the wake of the <u>Preliminary Results</u>, the domestic industry advanced a new argument.  Its case brief asserted that "[b]asic accounting concepts for the preparation of financial statements" require the disclosure of related parties on financial statements and that the accounting profession's definition of affiliated parties is "more expansive" than the definition contained in the antidumping statutes.  Intervenor-Defendants' Appendix, Tab 7, pp. 2-3.  It thus posited that the financial statements of Ta Chen and Emerdex 2 were "unreliable" because they

> should have disclosed the[ir] affiliation as well as the purchases, sales and financing transactions by these related companies with one another.  The financial statements . . ., however, fail to disclose the simple fact of the affiliation between Ta Chen and Emerdex [2], much less disclos[e] the financial impact of this relationship on their financial statements[.]
>
> Logically, given that [their] . . . financial statements do not disclose and properly treat affiliated-party transactions, and given that Emerdex [2]'[s] financial statements are wrong, so is the information derived from those financial statements[.] . . . In summary . . . the submitted statements . . . are inaccurate and unreliable, and cannot serve as essential source documents for the [ITA]'s review.

<u>Id</u>. at 3-4.  The domestic industry made similar arguments concerning the financial statements of Dragon and several other alleged affiliates, namely, Millennium, DNC, Billion, and PFP.

The ITA considered these new arguments in its <u>Decision Memorandum</u>, which confirmed and augmented the <u>Preliminary Results</u> and was adopted by reference in the <u>Final Results</u>.  The <u>Decision Memorandum</u> concluded that, with

> regard to Ta Chen's financial statements, the Department's . . . affiliation definition is not necessarily consistent with Taiwan or U.S. Generally Accepted Accounting Principles ("GAAP") definitions of related parties. As such, a finding of affiliation by the Department does not necessarily mean that such an affiliation should be reflected in Ta Chen's financial statements. Furthermore, [the domestic industry] ha[s] not demonstrated how Ta Chen's financial statements are inconsistent with Taiwanese GAAP. Therefore, for these final results, the Department will continue to rely on Ta Chen's financial statements.

<u>Decision Memorandum</u>, p. 8.  The agency also

> disagree[d] with the [domestic industry] regarding their argument that Ta Chen was totally untimely and uncooperative. Although the Department acknowledges that Ta Chen was not prompt in providing information requested . . ., the affiliation issue required complex research and analysis, and issuance of supplemental questionnaires. Based on submissions by the parties and its own research, the Department received sufficient information regarding the alleged affiliates to make a determination for this review.

<u>Id</u>. at 35.  It found that

> the evidence on the record does not warrant total AFA . . . because a review of all the entities identified by [the domestic industry] and addressed by the Department in the <u>Affiliation Memo</u> demonstrates that almost all the entities did not produce, purchase, or sell the subject merchandise during the POR, as Ta Chen reported. . . .  The Department finds that, with

the exception[] . . . of partial AFA[] for Emerdex 2
and Dragon . . . applying total AFA to Ta Chen is not
warranted in this review.   Notwithstanding Ta Chen's
lack of promptness in submitting information to the
Department, the breadth of the information submitted
was accepted by the Department as sufficient for
making a determination. . . .   The Department finds
that, with the exception of Emerdex 2 and Dragon . . .
Ta Chen cooperated . . . in providing satisfactory
data for the record and[,] therefore, total adverse
facts available is not appropriate.

Id. at 35-36.

     The Decision Memorandum reveals that the ITA ulti-

mately declined to analyze the domestic industry's allegations

concerning 25 companies[9] because there was

no evidence on the record demonstrat[ing] that [these]
companies' business activities [were] related to the
production or sale of subject merchandise during the

---

[9]   Millennium, South Coast, DNC, Billion, PFP, AMS
California, AMS North Carolina 1, AMS North Carolina 2, AMS
Corp., Stainless Express [collapsed by the ITA into one entity
in the Final Results, although considered two companies, viz.
Stainless Express 1 and Stainless Express 2, in the Preliminary
Results], Southstar, Estrela 1, Estrela 2, TCI Estrela, Estrela
3, Estrela 4, NASTA, Becmen, LLC, Becmen Specialty Steels, Inc.,
Becmen Trading International, Inc., KSI Steel, Inc., K Sabert,
Inc., and Sabert Investments, Inc.

     The Final Results do not discuss potential Ta Chen
affiliation with the Hsieh Family Trust or LPJR Investment.  The
Preliminary Results, however, concluded that they "were not
involved in subject merchandise or foreign like product".  69
Fed.Reg. at 40,862.  This preliminary determination was adopted
by the Final Results, thus bringing the total number of
allegedly-affiliated companies that the ITA declined to analyze
to 25.

> POR.   Additionally, the Department cannot find that
> the relationship between the[se] companies and Ta Chen
> had the potential to impact production or pricing
> decisions of subject merchandise.

Id. at 35.   The Final Results "made no changes" to Ta Chen's

preliminary dumping-margin calculation, 5.08 percent.   The

instant, consolidated actions thereupon commenced.

II

Section 771 of the Trade Agreements Act of 1979, as

amended, provides that the following "shall be considered to be

'affiliated' or 'affiliated persons'":

> (A) Members of a family, including brothers and
> sisters (whether by the whole or half blood), spouse,
> ancestors, and lineal descendants.

> (B) Any officer or director of an organization
> and such organization.

> (C) Partners.

> (D) Employer and employee.

> (E) Any person directly or indirectly owning,
> controlling, or holding with power to vote, 5 percent
> or more of the outstanding voting stock or shares of
> any organization and such organization.

> (F) Two or more persons directly or indirectly
> controlling, controlled by, or under common control
> with, any person.

> (G) Any person who controls any other person and
> such other person.

> For purposes of this paragraph, a person shall be
> considered to control another person if the person is
> legally or operationally in a position to exercise
> restraint or direction over the other person.

19 U.S.C. §1677(33).

During an antidumping investigation or review, the "question of affiliation is relevant to a number of price and cost issues". Uruguay Round Agreements Act _Statement of Administrative Action_ ("URAA-SAA"), H.R. Doc. No. 103-316, vol. 1, p. 838 (1994). One of those issues is

> the special rule for major inputs in . . . section
> 773(e)(3) . . . address[ing] diversionary input
> dumping by authorizing [the ITA] to inquire whether
> the transfer between "related" persons (_i.e._,
> "affiliated" persons . . .) of such an input is at a
> price below the input's production cost.

_Id_. The issue of affiliation is also relevant when determining whether a particular sale of merchandise occurred during the ordinary course of trade, as sales between affiliated parties are disregarded for purposes of calculating dumping margins. _See_ 19 U.S.C. §§ 1677(15)(B), 1677b(f)(2). Consideration of whether subject merchandise sales are to or by an affiliated party influences the ITA's decision whether to calculate that merchandise's U.S. price according to either export price or constructed export price. _See_ 19 U.S.C. §1677a; _Ta Chen Stainless Steel Pipe, Ltd. v. United States_, 28 CIT ___, ___, 342 F.Supp.2d 1191, 1194 (2004).

A

The domestic industry's Rule 56.2 Motion for Judgment
Upon the Agency Record [hereinafter "Intervenor-Defendants'
Brief"] raises three issues with regard to the ITA's
determinations:

(1)

Ta Chen was obligated in the underlying review to

> create an accurate record and provide the Department
> with the information requested to ensure that [it]
> could calculate accurate dumping margins for Ta Chen
> and its subject merchandise. See, e.g., Reiner Brach
> GmbH & Co. v. United States, 26 CIT 549, 558-59, 206
> F.Supp.2d 1323, 1333 (2002) . . . and 19 C.F.R. §
> 351.401(b)(1). . ..

Intervenor-Defendants' Brief, p. 9.   The domestic industry
posits that this general rule applies to potential affiliation
issues because

> as to affiliates . . . the Department's regulations at
> 19 C.F.R. §351.102(b) implementing 19 U.S.C.
> §1677(33)'s definition of "affiliated persons," the
> Department's policy places the burden of proof on
> respondents, not petitioners or the [ITA].

Id.   It cites the ITA's publication Antidumping Duties;
Countervailing Duties, 62 Fed.Reg. 27,296 (May 19, 1997).   The
preamble to that rulemaking notice provides that, in determining
whether one entity controls a second, the agency should not

ignore situations in which a control relationship,
while relating directly to another product or another
type of commercial activity, could affect decisions
involving the production, pricing or cost of the
merchandise under consideration. Therefore, in these
types of situations, where a control relationship
exists, <u>the respondent will have to demonstrate that
the relationship does not have the potential to affect
the subject merchandise or foreign like product</u>.

Intervenor-Defendants' Brief, p. 10 (underscoring partially
deleted; quoting <u>Antidumping Duties; Countervailing Duties</u>, 62
Fed.Reg. at 27,298 [hereinafter "<u>Preamble</u>"]). It insists that,

[c]learly, the burden was Ta Chen's to identify all of
its affiliations and related parties and to
demonstrate that these control relationships did not
actually affect or have the potential to affect
decisions involving the production, pricing or cost of
the merchandise under consideration.

<u>Id</u>. It therefore faults the ITA's "cho[ic]e not to decide

whether Ta Chen was affiliated with a total of twenty-five

companies" as being

the reverse of what the Department's policy and
judicial precedent require. As between the question
of affiliation and the question of . . . impact on the
merchandise under consideration, the logic of the
<u>Preamble</u> calls for the former to be decided
first[.] . . . To flip the order of decision, as the
Department did . . . was to invite Ta Chen to do as Ta
Chen did, that is, deny in a self-serving manner that
any of the companies alleged to be affiliated with Ta
Chen were affiliated with a Ta Chen or had any
involvement with Ta Chen's subject merchandise or
foreign like product.

<u>Id</u>. at 11-12. The domestic industry complains that this approach

unjustifiably transformed [Ta Chen's] into [the
domestic industry's] burden of proof (to show that the
alleged affiliates <u>did</u> actually or potentially affect
the production, pricing or costs of the subject
merchandise and foreign like product). . . . [This]
virtually guarantees . . . that the [ITA] will not
resolve on the merits the seminal issue of affiliation
in most or perhaps all instances, because Ta Chen, not
[the domestic industry], is privy to the sort of
commercially sensitive information necessary to
document its affiliates' involvement or not with the
merchandise under review. . . . [T]he [ITA]'s
decision not to resolve the issue of affiliation for
twenty-five alleged affiliates . . . [is] fundamentally
flawed.

<u>Id</u>. at 12 (emphasis in original).  The domestic industry claims

that the agency went so far as to inconsistently misapply its

allegedly-erroneous approach in that it

> eventually found fourteen companies were affiliated
> with Ta Chen. . . .  Of these fourteen companies,
> however, the Department concluded that only three
> (TCI[10], Emerdex 2, and Dragon []) were involved with
> the subject merchandise.  Yet the [ITA] still found
> the other eleven were affiliated with Ta Chen. . . .
> In addition, the [ITA] did not ask Ta Chen to
> demonstrate . . . that these control relationships by
> Ta Chen did not have the potential to affect the
> subject merchandise or foreign like product.

<u>Id</u>. at 13.  The domestic industry concludes that the

---

10  The domestic industry provides no citation for its
proposition that the ITA explicitly found TCI to be involved
with the subject merchandise, although the agency did note that
TCI is "Ta Chen's wholly-owned subsidiary" and that, due to TCI
and Dragon's "close and intertwined business activities, it is
not clear that Dragon in substance is a different company than
TCI[.]"  <u>Affiliations Memorandum</u>, p. 13.

> ultimate effect of the [ITA]'s mishandling of Ta
> Chen's burden of proof on affiliation was that the
> [ITA] did not uphold its statutory duty of computing
> the most accurate dumping margins it could for Ta Chen
> and Ta Chen's subject merchandise.

Id. at 14.  The domestic industry furthermore claims that the

administrative record contains substantial evidence that Ta Chen

was in fact affiliated with certain other companies, given the

various affiliation criteria of section 1677(33)[11], supra.  See

id. at 15.  It contends that

> had the [ITA] first properly decided the issue of Ta
> Chen's affiliations . . . each such affiliation should
> have triggered scrutiny of whether the affiliation had
> an impact on the production, pricing or cost of Ta
> Chen's [product].  Under the Preamble, it would have
> been Ta Chen's burden to show that those affiliations
> did not have even the potential for any such impact.

Id. at 16.

---

[11]   The domestic industry presented company-specific
affiliation arguments to the ITA based upon multiple subsections
of 19 U.S.C. §1677.  It relied upon subsection (33)(A) in making
affiliation arguments regarding PFP, DNC, and Billion; subsection
(33)(B) regarding AMS California, Millennium,  South Coast, KSI
Steel, Inc., K Sabert, Inc., Sabert Investments, Inc., Southstar,
Estrela 1 and Estrela 2; section (33)(D) regarding Stainless
Express 1, Becmen, LLC, Becmen Specialty Steels, Inc., Becmen
Trading International, Inc. and Southstar; subsection (33)(E)
regarding AMS California and AMS North Carolina 1 and 2; and
subsection (33)(F) regarding AMS California, Millennium, South
Coast, Stainless Express 1, PFP, DNC, Billion, AMS Corp., KSI
Steel, Inc., K Sabert, Inc., Sabert Investments, Inc., Becmen,
LLC, Becmen Specialty Steels, Inc., Becmen Trading International,
Inc., Southstar, NASTA, Hsieh Family Trust and LPJR Investments.
See Intervenor-Defendants' Brief, p. 16.

(2)

The domestic industry renews its argument that

> Ta Chen's audited financial statements were
> inconsistent with U.S. GAAP and unreliable to serve as
> a benchmark to check whether Ta Chen's reported data
> would yield accurate dumping margins. . . . U.S. GAAP
> has a broad disclosure requirement for related parties
> and related-party transactions and . . . Ta Chen (as
> well as its various related U.S. parties) did not
> satisfy that requirement.

Id. at 17. It complains that the ITA "said nothing at all on

this subject in . . . the Preliminary Results and only briefly

discussed this matter in connection with the final results".

Id., citing Decision Memorandum, pp. 7-8. It insists that this

> does not square with the [ITA]'s mandate to calculate
> Ta Chen's dumping margins as accurately as possible.
> . . . Nor does this dismissal square with the
> axiomatic precept that the burden was Ta Chen's to
> establish that its audited financial statements were
> in accord with U.S. GAAP and could therefore serve as
> a reliable benchmark to check the accuracy of Ta
> Chen's reported data.

Id. at 18. According to the domestic industry, the

> definition of "related parties" under U.S. GAAP is
> more expansive in every respect than the antidumping
> statute's definition of "affiliated persons". . . .
> Put otherwise, an entity that is an "affiliated
> person" under the antidumping law almost certainly is
> a "related party" under U.S. GAAP. On the other hand,
> a "related party" under U.S. GAAP will not necessarily
> also be an "affiliated person" under the antidumping
> law. . . . Under these circumstances, the [ITA]'s
> conclusion should have been that Ta Chen's audited
> financial statements are materially and severely

> inconsistent under U.S. GAAP due to Ta Chen's failure
> to disclose all of its related parties and, as
> required, its related-party transactions.

Id. at 19-20.  The domestic industry views the ITA's treatment

of Ta Chen's financial statements as

> improperly plac[ing] the burden of proof on [it] to
> demonstrate the relevance of these disclosure
> obligations. . . .  The upshot of Ta Chen's failure to
> carry its burden of proof and provide the [ITA] with
> trustworthy financial statements is that the [ITA]
> cannot legitimately rely upon those statements . . .
> to check the accuracy of the data that Ta Chen
> reported to the [ITA] and, therefore, of dumping
> margins based upon those reported data.

Id. at 21-22.

(3)

The domestic industry contends that, instead of

assigning partial adverse facts available to Emerdex 2 and

Dragon, the ITA should have resorted to either facts otherwise

available or total adverse facts available due to Ta Chen's

"pattern of deliberately withholding information that the [ITA]

properly sought and attempt[s] to deceive[] the [ITA]."  Id.

at 34.  It argues that the agency's finding that Ta Chen's

submitted affiliation data were "sufficient" and "satisfactory"

is "not correct under the antidumping statute".  Id. at 24,

quoting, in part, Decision Memorandum, pp. 35-36.  That statute

provides for agency determinations on the basis of facts

Consolidated
Court No. 05-00094                                              Page 22

available if

     (1) necessary information is not available on the record, or

     (2) an interested party or any other person --

       (A) withholds information that has been requested by the [ITA] . . .,

       (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested . . .,

       (C) significantly impedes a proceeding . . ., or

       (D) provides such information but the information cannot be verified . . .[.]

            *  *  *

     If the [ITA] . . . finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information . . ., the [ITA] . . ., in reaching the applicable determination . . . , may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available. Such adverse inference may include reliance on the information derived from --

     (1) the petition,

     (2) a final determination in the investigation under this subtitle,

     (3) any previous review under section 1675 of this title or determination under section 1675b of this title, or

     (4) any other information placed on the record.

19 U.S.C. §1677e(a) and (b).

Consolidated
Court No. 05-00094                                              Page 23


        The  domestic  industry  argues  that,  due  to  agency

misallocation of the burden of proof on affiliation, the ITA

> made no findings under [19 U.S.C. §§ 1677e(a)(1) and
> (2)], except as to the four Emerdex Companies and
> . . . Dragon[.] . . .  The [ITA] should likewise have
> followed these same statutory provisions in deciding
> whether facts available were required as to Ta Chen's
> other[] "alleged affiliates" . . . but [it] did
> not. . . .
>
> Such disregard . . . of the statute should not be
> allowed, especially given that Ta Chen did withhold
> information, was untimely in giving other
> information[,] . . . significantly impede[d] the
> [ITA]'s administrative review, and left the Department
> with information that could not be verified.

Intervenor-Defendants' Brief, pp. 26-27.


        The  domestic  industry  ventures  that  Ta Chen's  deficient

submissions  should  be  disregarded  per  19  U.S.C.  §1677m(d)  and

(e), to wit:


**(d) Deficient submissions**

> If the [ITA] . . . determines that a response to
> a request for information . . . does not comply with
> the request, the [ITA] . . . shall promptly inform the
> person submitting the response of the nature of the
> deficiency and shall, to the extent practicable,
> provide that person with an opportunity to remedy or
> explain the deficiency in light of the time limits
> established for the completion of . . . reviews under
> this subtitle.  If that person submits further
> information in response to such deficiency and
> either --
>
> > (1) the [ITA] . . . finds that such response
> > is not satisfactory, or

      (2) such response is not submitted within the applicable time limits,

then the [ITA] . . . may, subject to subsection (e) of this section, disregard all or part of the original and subsequent responses.

**(e) Use of certain information**

      In reaching a determination under section . . . 1675 . . . the [ITA] . . . shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the [ITA] . . ., if --

      (1) the information is submitted by the deadline established for its submission,

      (2) the information can be verified,

      (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

      (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the [ITA] . . . with respect to the information, and

      (5) the information can be used without undue difficulties.

It further hypothesizes that, were the ITA to have closely scrutinized Ta Chen's submitted information under section 1677m(e), it would have found that that information could not properly be considered, given its untimeliness and unreliability. It posits that such a finding would mandate the application of facts otherwise available per 19 U.S.C.

§1677e(a).   <u>See</u> Intervenor-Defendants' Brief, pp. 29-30.   The

domestic industry complains that, "in deciding against total

facts available for Ta Chen and its subject merchandise", the

ITA

> did not apply the statutory test . . . . Instead, the
> [ITA] said that "Ta Chen cooperated with the Depart-
> ment in providing satisfactory data for the record
> and[,] therefore, total adverse facts available is not
> appropriate." . . . <u>Decision Memorandum</u>, at 36. . . .
>
> There is no reasonable way that cooperation by Ta
> Chen in providing satisfactory data can be said to be
> the same as the statutory test at 19 U.S.C. §1677e(b)
> that obligates a respondent to cooperate with the
> [ITA] to the best of that respondent's ability. . . .
> In <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373,
> 1382 (Fed. Cir. 2003) . . . the Federal Circuit held
> that the statutory mandate that a respondent act to
> the best of its ability means that a respondent is
> required to do "the maximum it is able to do." . . .
> [I]n order for the [ITA] to conclude that a respondent
> has been uncooperative: (i) the [ITA] must objectively
> demonstrate that a reasonable and responsible
> respondent would have known that the requested
> information was required to be kept and maintained . .
> .; and (ii) the [ITA] must subjectively demonstrate
> that the respondent . . . both failed promptly to
> produce requested information and was not fully
> responsive due to . . . lack of cooperation either by
> failing to keep and maintain the requested information
> or by failing to put forth its maximum efforts to
> investigate and obtain the requested information from
> its records.

<u>Id</u>. at 32-33 (underscoring deleted).   It concludes that the ITA

> did not carry out any of the analysis called for by
> <u>Nippon Steel</u>[.] . . . [H]ad the [ITA] weighed the
> issue . . . under the statutory standard, there is
> substantial evidence on the record . . . that Ta Chen

did not cooperate to the best of its ability and did
not do the maximum it could do to answer the [ITA]'s
questions on the core issues of Ta Chen's affiliations
and related parties. . . . Had the [ITA] consistently
and properly followed the statutory standards on facts
available and on adverse inferences, total facts
available should have been assigned to Ta Chen as a
matter of law.

Id. at 33, 35.

                                    B

        In its response to the domestic industry's motion for

judgment on the agency record, Ta Chen, for the first time,

raises affirmative claims[12].   Stating that, if the propriety of

_____

        [12] The defendant has moved to strike them, contending that
they are untimely and outside the scope of plaintiff's
complaint.  See generally Defendant's Motion to Strike, pp. 2-4.

        Motions to strike are a drastic remedy that are not favored
and infrequently granted unless factors such as bad faith or
prejudice are demonstrated by the moving party.  E.g., Rhodia,
Inc. v. United States, 26 CIT 1107, 1109 and 240 F.Supp.2d 1247,
1249 n. 5 (2002).  Here, the court deems plaintiff's response as
both a request for leave to amend its complaint, which is hereby
granted, and a cross-motion for summary relief.  See, e.g.,
Vanetta U.S.A. Inc. v. United States, 27 CIT 860, 861-62
(2003)(permitting party to assert a cross-motion for summary
judgment in its response to an original motion for summary
judgment); Saarstahl AG v. United States, 20 CIT 1413, 1416-18,
949 F.Supp. 863, 866-67 (1996), quoting Foman v. Davis, 371 U.S.
178, 182 (1962)(if a party's claim is "a proper subject of
relief, he ought to be afforded an opportunity to test his claim
on the merits" unless a factor such as undue delay, bad faith,
dilatory motive or undue prejudice is present).

        Since the defendant does not show any such negative factor,
its motion to strike should be, and it hereby is, denied.

the ITA's application of adverse facts available is "to be

reviewed anyway . . . a full review thereof best promotes . . .

accura[cy]", the plaintiff takes the position that the ITA's

application of adverse facts available to Emerdex 2 data

> was not in accordance with law or supported by
> substantial evidence.   Only 0.012% by quantity (3 of
> about 25,000 sales), and only 0.019% by value ($500 of
> a total $2,587,631.95 value of U.S. sales) of TCI's
> [POR] subject merchandise U.S. sales[] that TCI
> reported . . . were to Emerdex.[]  When dealing with
> 25,000 sales, . . . Ta Chen's failure in best
> reporting of three sales cannot be but
> inadvertent. . . .  Such a mistake does not call for
> adverse facts available . . . .

Plaintiff's Corrected Response to Alloy Piping's Motion for

Judgment on the Agency Record [hereinafter "Plaintiff's Brief"],

p. 18.  It also complains that the ITA's resort to adverse facts

available regarding Dragon data was in error because the entity

> had nothing to do with the subject merchandise; Dragon
> sells only non-subject merchandise.[] [The ITA] cites
> no evidence otherwise in its decision.[]  Yet, Commerce
> imposed adverse facts available as to Ta Chen's
> reporting regarding Dragon on the stated (and wrong)
> basis that Dragon was involved with the subject
> fittings.[]

Id. at 18-19.

III

        The court's jurisdiction is based upon 28 U.S.C. §§

1581(c), 2631(c).  It will uphold the ITA's determination if

supported by substantial evidence on the record and in
accordance with law.  <u>See</u> 19 U.S.C. §1516a(b)(1)(B)(i).  Sub-
stantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." <u>Consol.</u>
<u>Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938); <u>Shanghai Foreign</u>
<u>Trade Enterprises Co. v. United States</u>, 28 CIT ___, ___, 318
F.Supp.2d 1339, 1345 (2004).

A

The primary focus of the domestic industry is the
ITA's refusal to apply total adverse facts available[13] to Ta Chen
subject-merchandise sales.  It must be remembered, however,
that, in its review of the administrative record as a whole, the
court cannot

> substitute its judgment for that of the [ITA] when the
> choice is "between two fairly conflicting views, even
> though the court would justifiably have made a
> different choice had the matter been before it de
> novo."

---

[13] Although the phrase "total adverse facts available" does
not appear in either the governing statute or the agency's
regulations,

> it can be understood . . . as referring to [the ITA]'s
> application of adverse facts available not only to the
> facts pertaining to specific sales for which
> information was not provided, but to the facts
> respecting all of respondents' sales encompassed by the
> relevant antidumping duty order.

<u>Shandong Huarong Mach. Co. v. United States</u>, 30 CIT ___, ___ and
435 F.Supp.2d 1261, 1265 n. 2 (2006).

SKF USA Inc. v. United States, 30 CIT ___, ___, 452 F.Supp.2d
1335, 1337 (2006), citing American Spring Wire Corp. v. United
States, 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984). Rather, so
long as there is an adequate basis in support of the ITA's
choice, the court must defer to the agency. Nippon Steel Corp.
v. United States, 458 F.3d 1345, 1359 (Fed.Cir. 2006), reh'g
denied (Oct. 27, 2006). Furthermore, in the absence of a
statutory mandate to the contrary, the ITA's actions must be
upheld as long as they are reasonable. Timken Co. v. United
States, 23 CIT 509, 516, 59 F.Supp.2d 1371, 1377 (1999).

     The statutory directive governing the ITA's use of
adverse inferences in selecting among facts otherwise available
has been held to be permissive on its face. See, e.g., Dorbest
Ltd. v. United States, 30 CIT ___, ___, 462 F.Supp.2d 1262,
1317-18 (2006); Co-Steel Raritan, Inc. v. U.S. Int'l Trade
Comm'n, 31 CIT ___, ___, Slip Op. 07-7, p. 18-19 (Jan. 17,
2007). In assessing the propriety of discretionary agency
action,

     unless a party alleges that [the agency] has exercised
     its discretion in an unlawful manner . . . or that the
     factual predicates of [the agency]'s decision were
     unsupported by substantial evidence . . . th[e] court
     may not disturb [the agency]'s decision[.]

30 CIT at ___, 462 F.Supp.2d at 1319.

Although the domestic industry is correct that a respondent must do "the maximum it is able to do" in meeting the ITA's requests for information, e.g., <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1382 (Fed.Cir. 2003), there is no requirement that the ITA affirmatively

> prove that an importer cooperated to the best of its ability every time that the agency decides *not* to apply adverse facts available.[1]   This [would] run[] counter to the discretion afforded to [the ITA] by section 1677e(b)[.]

<u>AK Steel Corp. v. United States</u>, 28 CIT ___, ___, 346 F.Supp.2d 1348, 1355 (2004)(emphasis in original).

While it is possible to conclude from the administrative record herein that Ta Chen did not cooperate with the ITA to the best of its ability, the issue of whether a respondent has been cooperative or recalcitrant amounts to a "line-drawing exercise [that] is precisely the type of discretion left within the agency's domain." <u>Baoding Yude Chem. Indus. Co. v. United States</u>, 25 CIT 1118, 1126, 170 F.Supp.2d 1335, 1343 (2001). <u>Cf</u>. <u>Uddeholm Corp. v. United States</u>, 11 CIT 969, 971-72, 676 F.Supp. 1234, 1237 (1987)(ITA has the discretion to change its data requests, to accept certain data or to reject the information). Moreover, the record as a whole

forms an "adequate basis" in support of the ITA's decision[14] not

to resort to total adverse facts available.  Nippon Steel v.

United States, 458 F.3d at 1359.  See also Consolo v. Fed.

Maritime Comm'n, 383 U.S. 607, 620 ("the possibility of drawing

two inconsistent conclusions from the evidence does not prevent

an administrative agency's finding from being supported by

substantial evidence").


    In light of the above, the court cannot conclude that

the ITA's decision not to apply total AFA was unreasonable.  The

plaintiff's arguments concerning the ITA's application of

partial adverse facts available to Emerdex 2 and Dragon fall

short for similar reasons.  Despite its characterization of its

failure to report subject merchandise sales to Emerdex as

"inadvertent", Plaintiff's Brief, p. 18, the ITA explained why

it viewed the omission otherwise, to wit, that,

> despite [its] repeated requests for information
> concerning Ta Chen's affiliates, [] Ta Chen did not
> identify certain U.S. sales of subject merchandise to
> Emerdex 2. . . .  [P]rior to the identification of
> Emerdex 2, the [ITA] requested Ta Chen to identify any
> sales of subject merchandise to Emerdex 1, an
> affiliate of Ta Chen[.] . . .  Ta Chen responded that
> no sales of subject merchandise existed. . . . **Ta**

---

[14] In reaching its determination, the ITA considered the
"breadth of information submitted" by Ta Chen along with the
"promptness" with which it was produced.  See Decision Memorandum,
p. 36.

> **Chen also did not identify the sales of subject merchandise to Emerdex 2.  Given this opportunity to identify sales to affiliated parties, Ta Chen chose to interpret the [ITA]'s question in the narrowest possible manner[.]**

Decision Memorandum, p. 11 (emphasis in original; quoting in part the Preliminary Results, 69 Fed.Reg. at 40,863).  In thus explicitly stating why Ta Chen's reporting of incomplete sales data was something more than an inadvertent omission, the ITA fulfilled its duty to articulate why it concluded that the plaintiff failed to act to the best of its ability.  Cf. Allegheny Ludlum Corp. v. United States, 24 CIT 1424, 1445, 215 F.Supp.2d 1322, 1341 (2000), citing Mannesmannrohren-Werke AG v. United States, 23 CIT 826, 841, 77 F.Supp.2d 1302, 1315 (1999). See also China Steel Corp. v. United States, 27 CIT 715, 735, 264 F.Supp.2d 1339, 1360 (2003)(to apply an adverse inference the ITA must find either a willful decision not to comply with its request or behavior below the standard for a reasonable respondent).

     The record at bar contains substantial evidence that the plaintiff's failure to report Emerdex 2 as an affiliate that dealt in subject merchandise, and its sales of subject merchandise thereto, was not "excusable inadvertence [rather] a demonstration of a lack of regard for its responsibilities in the investigation."

_Allegheny Ludlum Corp. v. United States_, 24 CIT at 1445, 215
F.Supp.2d at 1341.   That the data ultimately disclosed by the
plaintiff revealed that its sales to Emerdex 2 comprised only a
small percentage of its sales of subject merchandise does not
change this fact.[15]

The court also cannot find error in the ITA's
determination that Dragon was involved with subject merchandise.
In considering that issue, the agency referred to substantial
evidence consisting of

> thousands of sales observations of subject merchandise
> reported in Ta Chen's section C database [that] were
> sold through [Dragon] facilities during the POR.
> Therefore, the record shows that Dragon's selling
> activities included responsibility for these sales.
>
> The record evidence does not support Ta Chen's
> argument that Dragon had no activities related to
> subject merchandise.   Rather, the record indicates
> that Dragon incurred U.S. selling expenses related to
> subject merchandise on behalf of Ta Chen. . . .   Thus,
> Ta Chen's relationship with Dragon has the potential
> to impact pricing decisions of subject merchandise.
> Ta Chen's submissions regarding Dragon have been
> wholly inadequate in consideration of the [ITA]'s
> mandate to calculate a dumping margin which accounts
> for Ta Chen's U.S. selling expenses.

---

[15] _Compare_ _Mannesmannrohren-Werke AG v. United States_, 23
CIT 826, 850-52, 77 F.Supp.2d 1302, 1322-24, which applied the
maxim _de minimis non curat lex_ ("the law cares not for trifles")
when presented with a respondent's figures that were of a
"limited nature", _with_ _Decision Memorandum_, p. 11 (discussing Ta
Chen's failure to disclose a potential affiliate and sales
thereto in response to repeated and pointed ITA questioning).

<u>Affiliations Memorandum</u>, pp. 13-14.  The ITA concluded that

> Ta Chen failed to provide . . . information in a time-
> ly manner or in the form or manner requested under the
> antidumping statute. . . .  [T]he information on the
> record regarding . . . Dragon . . . was ultimately
> obtained from Ta Chen only after the [ITA]'s multiple,
> detailed and specific requests.  Nonetheless, this
> information was not disclosed to the [ITA] in a timely
> manner and Ta Chen was less than forthcoming about the
> nature of its affiliation and business transactions
> with Dragon[.]

<u>Decision Memorandum</u>, p. 19, citing <u>Affiliations Memorandum</u>.


In light of the above, it cannot be said that the
ITA's decision to apply partial adverse facts available to
Dragon was not in accordance with law or supported by
substantial evidence.


                              B

The court cannot fault the ITA's decision to consider
Ta Chen's financial statements.  The agency reasonably
determined that their failure to disclose Ta Chen affiliates did
not render them unreliable.


The domestic industry's arguments to the contrary echo
those raised in <u>Kaiyuan Group Corp. v. United States</u>, 29 CIT
___, 391 F.Supp.2d 1317 (2005), wherein plaintiff China First
challenged the ITA's decision to find it affiliated with another

entity under section 1677(33)(F).  China First relied on

International Accounting Standards to argue that,

> since [the alleged affiliate was] not listed in [its]
> financial statements, and because outside auditors
> certified [its] financial position, the two companies
> are not affiliated and therefore should not be
> collapsed.

29 CIT at ____ and 391 F.Supp.2d at 1324 n. 13.  The ITA's

response therein was a familiar one, to wit, there was

> no basis for concluding that the [International
> Accounting Standards] govern whether, for purposes of
> antidumping reviews, companies should be collapsed
> under Commerce's regulations.

29 CIT at ____ and 391 F.Supp.2d at 1324-1325 n. 13.  Siding with

the ITA, the court in Kaiyuan Group Corp. agreed that the

> issue before the agency and the Court [wa]s not
> whether, for accounting purposes, [the alleged
> affiliate] should be considered [China First's]
> subsidiary or associate; rather, the question [wa]s
> whether Commerce's decision to collapse the two
> companies, pursuant to *Commerce's* regulations, is
> supported by substantial evidence.

29 CIT at ____ and 391 F.Supp.2d at 1325 n. 13 (emphasis in

original; internal quotation marks deleted).

Because the antidumping laws, along with agency

implementing regulations, alone establish the criteria for

determining whether parties are affiliated, their resemblance

Consolidated
Court No. 05-00094                                                Page 36

to, or possible overlap with, U.S. or foreign GAAP standards are

not of conclusive moment.    As the ITA succinctly stated in

Notice of Final Determination of Sales at Less Than Fair Value;

Certain Hot-Rolled Flat-Rolled Carbon-Quality Steel Products

From Brazil, 64 Fed.Reg. 38,756, 38,769 (July 19, 1999),

> the similarity between the Brazilian GAAP's definition
> of a "related party" and the Act's definition of an
> "affiliated party" is irrelevant.  A similarity in the
> definition of two words does not necessarily give them
> the same meaning, especially when applied in different
> circumstances.

In concurring therewith, this court cannot disagree with the

ITA's conclusion in the review at bar that

> a finding of affiliation by the [ITA] does not
> necessarily mean that such an affiliation should be
> reflected in Ta Chen's financial statements.

Decision Memorandum, p. 8.  The agency properly determined that

those financial statements' failure to list affiliated entities

as "related parties" does not render them inherently unreliable.

    Moreover, the ITA's decision to rely upon audited,

home-country GAAP-compliant financial statements in gathering

cost-of-production data was in accordance with the law[16] and

---

[16] See 19 U.S.C. §1677b(f)(1)(A), which provides that cost
of production and constructed value

> shall normally be calculated based on the records of
> the exporter or producer of the merchandise, if such

(footnote continued)

agency practice[17].  In fact, the Court of International Trade

> has consistently upheld Commerce's reliance on a firm's
> expenses as recorded in the firm's financial
> statements, as long as those statements were prepared
> in accordance with the home country's GAAP and do not
> significantly distort the firm's actual costs.

FAG U.K. Ltd. v. United States, 20 CIT 1277, 1290, 945 F.Supp. 260,

271 (1996)(citations omitted).  See also Laclede Steel Co. v.

United States, 18 CIT 965, 974-975 (1994); URAA-SAA, p. 834.

        Commerce is generally given the benefit of "wide

latitude" in the verification procedure it chooses to implement.

Pohang Iron and Steel Co. v. United States, 23 CIT 778, 796

(1999), citing American Alloys, Inc. v. United States, 30 F.3d

1469, 1475 (Fed.Cir. 1994).  Accordingly, the court

> defers to the agency's sensibility as to the depth of
> the inquiry needed.  In the absence of evidence in the
> record suggesting the need to examine further the

---

> records are kept in accordance with the generally
> accepted accounting principles of the exporting
> country (or the producing country, where appropriate)
> and reasonably reflect the costs associated with the
> production and sale of the merchandise.

[17] See, e.g., ITA Final Determination of Sales at Less Than Fair Value: Canned Pineapple Fruit From Thailand, 60 Fed.Reg. 29,553, 29,559 (June 5, 1995) ("the Department's practice is to adhere to an individual firm's recording of costs in accordance with GAAP of its home country if the Department is satisfied that such principles reasonably reflect the costs of producing the subject merchandise").

> supporting evidence itself, the agency may accept the
> credibility of [a] document at face value.

Id. at 797.

The administrative record shows that the ITA was satisfied that Ta Chen's financial statements reasonably reflected its costs of production.[18]  The court finds no error in the ITA's reliance thereon.

C

A claim that two entities are affiliated within the meaning of 19 U.S.C. §1677(33)(F) and (G)[19] turns on whether one entity "controls" another.  The statute provides that

> a person shall be considered to control another person
> if the person is legally or operationally in a position
> to exercise restraint or direction over the other
> person.

---

[18] See, e.g., Decision Memorandum, pp. 7-8. Although the ITA did not exhaustively explain its decision to rely on the financial statements at issue, its decisional path in this regard is "reasonably discernable" from the record. See, e.g., Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369-70 (Fed.Cir. 1998).

[19] To repeat, those subsections state that affiliated persons are:

> (F) Two or more persons directly or indirectly
> controlling, controlled by, or under common control
> with, any person.

> (G) Any person who controls any other person and
> such other person.

19 U.S.C. §1677(33).  ITA regulations further provide:

> . . .  In determining whether control over another
> person exists . . ., the Secretary will consider the
> following factors, among others: corporate or
> family groupings; franchise or joint venture agreements; debt
> financing; and close supplier relationships.   The
> Secretary will not find that control exists on the
> basis of these factors unless the relationship has the
> potential   to   impact   decisions   concerning   the
> production, pricing, or cost of the subject merchandise
> or foreign like product.   The Secretary will consider
> the temporal aspect of a relationship in determining
> whether   control   exists;   normally,   temporary
> circumstances will not suffice as evidence of control.

19 C.F.R. §351.102(b).

In <u>TIJID, Inc. v. United States</u>, 29 CIT ___, 366
F.Supp.2d 1286 (2005), plaintiff TIJID alleged that it was
affiliated with another party pursuant to subsections 1677(33)(F)
and (G).  In reviewing the ITA's underlying negative affiliation
determination, the court held that, to find affiliation under 19
U.S.C. §1677(33)(F),

> two elements must be satisfied . . ..  First, two
> parties must be legally or operationally in a position
> to exercise restraint or direction over a third party.
> . . .  Second, the relationship with the third party
> must have the potential to impact decisions concerning
> the production, pricing, or cost of the subject
> merchandise.

29 CIT at ___, 366 F.Supp.2d at 1293, citing <u>Mitsubishi Heavy
Indus., Ltd. v. United States</u>, 23 CIT 326, 335-36, 54 F.Supp.2d

1183, 1192 (1999).  The court additionally found that 19 C.F.R.
§351.102(b) was a "reasonable [agency] interpretation" of section
1677(33)'s requirement that a person considered to control
another person be "legally or operationally in a position to
exercise restraint or direction over the other person" whereby
control over another

> exists *only* when "the relationship has the potential to
> impact decisions concerning the production, pricing, or
> cost of the subject merchandise or foreign like
> product."

29 CIT at ___, 366 F.Supp.2d at 1298, quoting 19 C.F.R.
§351.102(b) (emphasis added).  Because the potential to affect
decisions concerning the production, pricing, or cost of subject
merchandise is the *sine qua non* of "control", as reasonably
interpreted by the ITA, such potential must be established for a
finding of affiliation-by-control "within the meaning of section
771(33) of the Act".  19 C.F.R. §351.102(b).

       Although the party responding to an ITA investigation
has the burden of creating an adequate record, <u>e.g.</u>, <u>NSK Ltd. v.
United States</u>, 20 CIT 361, 369, 919 F.Supp. 442, 449 (1996);
<u>Zenith Elecs. Corp. v. United States</u>, 988 F.2d 1573, 1583
(Fed.Cir. 1993), the <u>TIJID</u> court clarified that, in

> order for Commerce to find that affiliation exists, *the
> party alleging affiliation* must successfully
> demonstrate that [the] elements [of affiliation] have
> been fulfilled.

29 CIT at ___, 366 F.Supp.2d at 1293 (emphasis added).  In that
case, a party alleging affiliation "failed to demonstrate that
[companies under its purported control] were involved in sales of
the subject merchandise."  29 CIT at ___, 366 F.Supp.2d at 1295.
The court held that, given the absence of such proof, the ITA
"reasonably concluded that [those companies] did not have the
potential to impact decisions concerning the subject
merchandise."  Id.

     This court does not read the ITA Preamble as altering
this paradigm.  Rather, the relevant portion relied upon by the
domestic industry simply clarifies that, should the agency
determine that a "control relationship" exists,

     the respondent will have to demonstrate that the
     relationship does not have the potential to affect the
     subject merchandise or foreign like product.

62 Fed.Reg. at 27,298.  It does not obviate the requirement that
a party alleging affiliation affirmatively make its case based
upon the record created by the respondent[20].  Rather, the

---

[20] While the domestic industry's asserted frustration
regarding what it perceives to be an incomplete record may be
understandable, it is up to the ITA to "assure itself that it
has asked questions sufficient to provide it with enough
information to make [an] affiliation determination[.]"  Ta Chen
Stainless Steel Pipe, Ltd. v. United States, 23 CIT 804, 820
(1999).  To that end, the agency "has an obligation to make

(footnote continued)

Preamble announces agency policy[21] to allow a respondent the opportunity to offer evidence demonstrating lack of control following an agency determination that a "control relationship" exists. Such an approach was employed by the ITA in the case at bar.

Because a party must prove each element of its allegations concerning affiliation[22], the ITA's analysis of the

---

[questionnaire] questions affected by affiliation issues clear, in light of its own recognition that affiliation is a complex concept[.]" Id.

[21] Although the Court of Appeals for the Federal Circuit ("CAFC") has not decided the question generally of whether a regulatory preamble is an agency determination entitled to Chevron deference, see, e.g., Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284, 1290 (Fed.Cir. 2003), the Court of International Trade has held specifically with regard to this preamble that,

> although it was issued after the notice-and-comment rulemaking procedure that went into 19 CFR § 351.107, [it] is a policy statement, and not an agency interpretation that holds the "force of law", such as would be entitled to deference[.]

Tung Mung Dev. Co. v. United States, 25 CIT 752, 769 (2001).

[22] In its reply brief, the domestic industry for the first time asserts that the ITA, in determining affiliation-by-control, has established a "policy" of first considering whether an entity is "legally or operationally in a position to exercise restraint" over another, and only thereafter reaching the question of whether the relationship of the entities in question has the "potential to impact decisions relating to subject merchandise." Reply Brief by Alloy Piping, p. 3. The domestic industry rests this argument upon statements made by the ITA in the agency's papers filed with the court in TIJID. Id., citing TIJID, Inc. v. United States, 29 CIT at ___, 366 F.Supp.2d at 1298-99.

(footnote continued)

domestic industry's affiliation-by-control claims[23] herein did no

violence to the statutory scheme.   And the court finds no error

in the ITA's conclusion that no further affiliation analysis was

necessary concerning companies alleged to be affiliated with Ta

Chen by virtue of "control" pursuant to subsections 1677(33)(F)

---

      Notwithstanding the fact that arguments raised for the first
time in a reply brief are not properly before the court, see,
e.g., United States v. Ford Motor Co., 463 F.3d 1276, 1276-
77 (Fed.Cir. 2006), reh'g denied (Nov. 22, 2006), this court does
not view the isolated statement of agency procedure referred to
in TIJID as establishing a practice to which the ITA must adhere
in subsequent proceedings.   See Ranchers-Cattlemen Action Legal
Found. v. United States, 23 CIT 861, 884-85, 74 F.Supp.2d 1353,
1374 (1999) ("An action . . . becomes an 'agency practice' when a
uniform and established procedure exists that would lead a party,
in the absence of notification of change, reasonably to expect
adherence to the established practice or procedure"); Shandong
Huarong Machinery Co. v. United States, 30 CIT at ___, 435
F.Supp.2d at 1282  n. 23 (2006)(two prior determinations are not
enough to constitute an agency practice binding the ITA).
Moreover, having rejected the domestic industry's burden-shifting
argument, the court notes that the order in which the elements of
control are addressed by the ITA has no impact upon the
dispositive question of whether a party "successfully
demonstrate[s] that [the] elements [of affiliation] have been
fulfilled."   TIJID, Inc. v. United States, 29 CIT at ___, 366
F.Supp.2d at 1293.

      [23] The domestic industry identifies its subsection 33(F)
control-based affiliation claims as pertaining to AMS
California, Millennium, South Coast, Stainless Express 1, PFP,
DNC, Billion, AMS Corp., KSI Steel, Inc., K Sabert, Inc., Sabert
Investments, Inc., Becmen, LLC, Becmen Specialty Steels, Inc.,
Becmen Trading International, Inc., Southstar, NASTA, Hsieh
Family Trust, and LPJR Investments.   See Intervenor-Defendants'
Brief, pp. 15-16.

Consolidated
Court No. 05-00094                                           Page 44

and (G) when it could not find

> evidence on the record demonstrating that [those]
> companies' business activities [were] related to the
> production or sale of subject merchandise during the
> POR [or] . . . that the relationship between [those]
> companies and Ta Chen had the potential to impact
> production or pricing decisions of subject merchandise.

<u>Decision Memorandum</u>, p. 35.

The ITA's individual determinations as to whether companies alleged to be affiliated with Ta Chen by virtue of control had activities related to the production or sale of subject merchandise are additionally supported by substantial evidence. The agency is presumed to have considered all record evidence and comments thereon in reaching its determinations, absent some showing to the contrary. <u>See</u>, <u>e.g.</u>, <u>Bethlehem Steel Corp. v. United States</u>, 28 CIT ___, ___, 316 F.Supp.2d 1309, 1316-17 (2004).

The record shows that, for each alleged Ta Chen affiliate, the ITA considered and weighed evidence probative of whether that entity was involved with the subject merchandise. <u>See</u> <u>Decision Memorandum</u>, pp. 20-36. It reveals adequate evidence to support the agency's individual determinations, despite the existence of some conflicting evidence. Hence, the court will

not disturb the ITA's determinations, for it is unquestionably the "role of the expert factfinder . . . to decide which side's evidence to believe." Nippon Steel Corp. v. United States, 458 F.3d at 1359. See also Hercules, Inc. v. United States, 11 CIT 710, 721, 673 F.Supp. 454, 466 (1987)("Clearly, it is within Commerce's discretion to make reasonable interpretations of the evidence and to determine [its] overall significance")(internal quotation omitted).

D

The ITA's analysis of those entities alleged to be Ta Chen affiliates within the meaning of 19 U.S.C. §1677(33)(A)-(E), however, cannot withstand similar scrutiny. In Crawfish Processors Alliance v. United States, 477 F.3d 1375, 1379-80 (Fed.Cir. 2007), the court held that the standard for affiliation set forth in 19 U.S.C. §1677(33)(E) is unambiguous. In the administrative review underlying that matter, the ITA considered possible affiliation between the Fujian and Pacific Coast corporations. The

> record show[ed] that Fujian owned and exercised more
> than 5% of Pacific Coast's public shares during the
> [POR], an amount sufficient to establish affiliation
> [per 19 U.S.C. §1677(33)(E)]. . . . Nonetheless,
> Commerce discounted the evidence of ownership because
> the record showed no evidence of Fujian making a
> transfer of cash or merchandise into Pacific Coast.

477 F.3d at 1378.  The appellants contended therein that the ITA had erroneously interpreted the affiliation statute to require the transfer of cash or merchandise to show direct or indirect ownership of 5% or more of the shares of an organization.  The CAFC agreed, holding that subsection (33)(E)

> clarifies, in quite broad terms, that owning, controlling, or holding, "directly or indirectly," over 5% of an entity's stock constitutes "affiliation." This court detects no ambiguity in that standard.   .  . . To prove affiliation, neither the statute nor the regulations require evidence of the transfer of cash or merchandise to prove that a person directly or indirectly owns at least 5% of an organization's shares. Likewise, neither the statute nor the regulations require the transfer of cash or merchandise to show that a person holds, with power to vote, 5% or more of the outstanding voting stock of an organization. . . .   [W]hen requiring Fujian and Pacific Coast to provide evidence that "the merchandise sold by Pacific Coast originated from Fujian," . . . Commerce made demands beyond the requirements of the statute.

Id. at 1380-81.  See also Mitsubishi Heavy Indus., Ltd. v. United States, 22 CIT 541, 572, 15 F.Supp.2d 807, 832 (1998) (ITA's affiliation analysis erroneous because it required a greater showing than mandated by statute).

Similarly, this court discerns no ambiguity in 19 U.S.C. §1677(33)(A)-(E).  The first four lettered subsections plainly do not premise affiliation upon "control".  In fact, that word is nowhere found therein.  The same cannot be said of

subsection (E), which refers to "owning, controlling, or holding"

stock or shares in a second organization. Nevertheless, as

<u>Crawfish Processors Alliance</u> makes clear, control is not

indispensable to a finding of affiliation under subsection (E);

proof of ownership or holding the requisite amount of stock may

suffice[24]. <u>See</u> 477 F.3d at 1381. This court concurs with the

reading of section 1677(33) articulated in <u>Hontex Enterprises,</u>

<u>Inc. v. United States</u>, 27 CIT 272, 291, 248 F.Supp.2d 1323, 1339

(2003), to wit, that entities

> are "affiliated" where they share either *certain*
> *relationships*, such as by family, shared company
> officers, directors, partners, employer/employee
> status, or cross-ownership of voting stock, *see* 19
> U.S.C. § 1677(33)(A)-(E), or share any other
> relationship by which one entity is "legally or
> operationally in a position to exercise restraint or
> direction over the other".

Emphasis added; footnote, citations omitted. <u>Cf</u>. <u>China Steel</u>

<u>Corp. v. United States</u>, 27 CIT at 724, 264 F.Supp.2d at 1350-51;

Plaintiff's Brief, pp. 7-8, 13. The plain and unambiguous

---

[24] The court also notes that subsection (E), on its face,
does not contemplate a situation whereby a person exercises
"control over another person [] within the meaning of section
771(33) of the Act". 19 C.F.R. §351.102(b). Rather, it deals
with the control of stock or shares. This contrasts sharply with
the language of subsections (F) and (G), which refer to "[t]wo or
more persons . . . controlling . . . any person" and "[a]ny
person who controls any other person and such other person",
respectively.

language[25] of 19 U.S.C. §1677(33) instructs that, to successfully prove affiliation under subsections (A)-(E), a party need only show the existence of one of the standards specified therein. The statute does not require that a party show that entities allegedly affiliated by virtue of those subsections be either involved with or related to the production or sale of subject merchandise or in a relationship that has the potential to impact production or pricing decisions of subject merchandise. And the ITA erred in requiring the petitioners to make such a showing in the review herein. See Antidumping Duties; Countervailing Duties, 61 Fed.Reg. 7,308, 7,311 (Feb. 27, 1996)("the statute provides that if any one of the factors in section 771(33) is present, the Department is required to find that persons are affiliated")(emphasis added).

---

[25] Although the defendant argues that "statutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference" under Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), the court does not read the administrative record at bar as containing any particular agency interpretation of 19 U.S.C. §1677(33). In any event, because Congress has "directly spoken" to the precise question at issue, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. See also Dus & Derrick, Inc. v. U.S. Sec'y of Agric., 31 CIT ___, ___, 469 F.Supp.2d 1326, 1333 (2007).

IV

Despite the ITA's analytical misstep(s), the record, such as it is, provides little indication that administrative reconsideration thereof will necessarily lead to a modification of plaintiff's antidumping-duty rate.   If, as the plaintiff and the defendant assert, the entities allegedly affiliated with Ta Chen within the meaning of 19 U.S.C. §1677(33)(A)-(E) were in fact uninvolved with the subject merchandise, a finding on remand of affiliation would not have any impact thereon.   And a court need not require an agency redetermination if doing so "would be 'futile' by virtue of having no effect on the result of the case."   E.g., Ammex, Inc. v. United States, 28 CIT ___, ___, 341 F.Supp.2d 1308, 1314 n. 12 (2004).

Nonetheless, both the agency and the court are constrained to give effect to the unambiguously-expressed intent of Congress, and the court therefore hesitates to conclude that agency reconsideration of the domestic industry's unsatisfied affiliation claims would be futile.   The ITA has discretion on remand to request and evaluate new data.   See, e.g., NTN Bearing Corp. of America v. United States, 25 CIT 118, 124-25, 132 F.Supp.2d 1102, 1107-08 (2001)(citations omitted).   And it is not absolutely certain that affirmative affiliation determina-

tions on remand would have no effect upon the plaintiff's antidumping-duty rate.  For instance, such a finding could cause the agency to scrutinize affiliated-entity sales data[26], leading to identification of affiliated-party transactions involving subject merchandise.  The propriety of such steps can only be determined by the ITA, which must reconsider on remand the "complex affiliation issues" presented by this case.


                                A

        In view of the foregoing, intervenor-defendants' Motion for Judgment on the Agency Record should be granted to the extent of remand to the ITA to complete its analysis concerning those entities affiliated with Ta Chen within the

---

[26]   Such action is contemplated by the Department of Commerce's Import Administration Antidumping Manual (1997), chapter 8, page 96 of which notes that, in

> order to identify the manufacturer, producer or
> exporter of the merchandise, [the ITA] require[s] the
> recipients of [its] questionnaires to see that
> affiliated companies also report their sales. . . .
> [I]t is necessary for respondents to report sales by
> affiliated companies to ensure that [the ITA's] . . .
> review covers the applicable U.S. and home market sales
> of the class or kind of merchandise.  We cannot ensure
> that we have adequately investigated applicable sales
> of the merchandise subject to investigation unless
> affiliates companies' sales are reported.

meaning of 19 U.S.C. §1677(33)(A)-(E)[27].  Plaintiff's request for related relief, on the other hand, should be, and it hereby is, denied.

The defendant may have until August 3, 2007 to carry out that analysis and report the results thereof to the court and the parties, which may comment thereon on or before August 17, 2007.

So ordered.

Decided:  New York, New York
          May 30, 2007

_/s/ Thomas J. Aquilino, Jr._
Senior Judge

_____

[27]  The domestic industry's papers assert, and the administrative record so indicates, that it relied upon subsection (33)(A) in pressing affiliation arguments regarding PFP, DNC, and Billion; upon subsection (33)(B) regarding AMS California, Millennium, South Coast, KSI Steel, Inc., K Sabert, Inc., Sabert Investments, Inc., Southstar, Estrela 1 and Estrela 2; upon subsection (33)(D) regarding Stainless Express 1, Becmen, LLC, Becmen Specialty Steels, Inc., Becmen Trading International, Inc., and Southstar; and upon subsection (33)(E) regarding AMS California and AMS North Carolina 1 and 2.  See Intervenor-Defendants' Brief, pp. 15-16.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
Deputy Clerk